UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| ROGER L. JENNINGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:13-CV-246 |
| | ) | (JORDAN/GUYTON) |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Doc. 12 & 14] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15 & 16]. Plaintiff Roger L. Jennings seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On September 9, 2010, Plaintiff protectively filed a Title II and Title XVIII application and an application for supplemental security income pursuant to Title XVI and XIX with an alleged onset date of January 1, 2006. [Tr. 173; 148; 141]. The Social Security Administration denied Plaintiff's application initially and upon reconsideration. [Tr. 89-97; 99-104]. Plaintiff timely filed a request for a hearing, and he appeared before Administrative Law Judge, John McFadyen, on January 24, 2012 in Kingsport, Tennessee. [Tr. 105-06; 54]. The ALJ issued an unfavorable decision on March 16, 2012. [Tr. 16-39]. Plaintiff filed his appeal of the decision,

which the Appeals Council declined to review on August 1, 2013. [Tr. 7-8; 1-6].

Having exhausted his administrative remedies, Plaintiff filed a complaint with this Court on October 1, 2013, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

I.   **ALJ FINDINGS**

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
>
> 2. The claimant has not engaged in substantial gainful activity since January 1, 2006, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).
>
> 3. The claimant has the following combination of severe impairments: obesity, diabetes mellitus, chronic obstructive pulmonary disorder (COPD), obstructive sleep apnea, musculoskeletal impairment due to knee pain, depression, anxiety, social phobia, and rule out bipolar disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with some additional limitations. Specifically, claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently. He can stand, walk, and sit for 6 hours each in an 8-hour day. Claimant, however, can squat, crawl, and kneel only occasionally. He is limited to the performance of simple, routine, repetitive tasks working with things rather than people.
>
> 6. The claimant is capable of performing past relevant work as a

rest area attendant. This work does not require the performance of work-related activities precluded by claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2006, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 22-33].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

3

> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C.

§ 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo,* nor resolve conflicts in evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson,

5

378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See Id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. EVIDENCE

### A. *Medical Evidence*

Plaintiff protectively filed an application for Social Security Disability benefits on September 9, 2010 with an alleged onset date of January 1, 2006. [Tr. 172-73]. Plaintiff was 44 years old when the ALJ issued an unfavorable decision on March 16, 2012. [Tr. 140; 16]. He has a high school education and work experience as a rest area attendant and tool and die maker and repairman. [Tr. 178]. Plaintiff alleged that he ceased working due to depression, anxiety, social phobia, Chronic Obstructive Pulmonary Disease, diabetes, knee injury, schizophrenia, paranoia, and "very low stamina". [Tr. 177]. Plaintiff stated that he had filed applications for Social Security benefits several times before with no success. [Tr. 191].

Plaintiff began seeing Dr. Charles Gaines, a licensed doctor of osteopathy, in 2002. [Tr. 235]. During an exam on October 6, 2010, Dr. Gaines diagnosed Plaintiff with generalized anxiety; major depressive disorder, severe; social phobia; chronic headaches; and bi-polar disorder. [Id.]. Dr. Gaines found that Plaintiff's mental status was "alert and oriented . . . [h]is mood is said to be depressed. Affect is near flat, compatible with mood . . . [h]is insight and judgment are good." [Id.]. He further assessed Plaintiff's condition, finding that he "is not a candidate for regular employment. I do not believe [Plaintiff] is a malingerer or is in any way

6

responsible for his illness. I fully support his decision to apply for SSI." [Id.].

Plaintiff also sought treatment with Dr. Robert Locklear who diagnosed him with chronic obstructive pulmonary disease, severe depression, hyperlipidemia, and schizophrenia. [Tr. 330-34; 233]. Dr. Locklear saw Plaintiff almost monthly from May through November 2011 and during each exam Dr. Locklear noted that Plaintiff was "alert and oriented to time, place, and person. No unusual anxiety or evidence of depression." [Tr. 340-57]. On September 22, 2011, Dr. Locklear found that Plaintiff's depression was doing well with medication. [Tr. 352]. In 2009, Dr. Locklear wrote a letter stating that "I do not feel that he is able to work due to his mental state." [Tr. 233]. However, in a primary physician's statement dated January 5, 2010, Dr. Locklear stated that Plaintiff was "capable of low stress jobs." [Tr. 331].

Plaintiff sought therapeutic treatment with Karen Dewitt, a licensed psychiatric-mental health nurse practioner, and David Brown, a licensed professional counselor, at Frontier Health. [See Tr. 232; 358-64; 377-81]. They found that Plaintiff's prognosis was poor and that his psychological symptoms would frequently interfere with his attention and concentration. [Tr. 377-81]. Ms. Dewitt diagnosed Plaintiff with generalized anxiety, major depressive disorder, social phobia, chronic headaches, and noted possible bipolar disorder. [Tr. 358-64]. Mr. Brown issued a letter to the Hearing Board of Appeals on June 4, 2008 stating that should Plaintiff "have to face work related situations, maintaining a stable level of productivity would be most unlikely. While he may gain some level of functioning at home, being able to function outside his home socially or in work related situations is not probable." [Tr. 232].

Several non-treating physicians submitted disability reports regarding Plaintiff's diagnoses and Social Security application. Dr. Charlton Stanley ("C. Stanley") completed a disability determination after conducting an examination on July 24, 2007. [Tr. 393-98]. During

7

the exam, Plaintiff reported that his daily activities include light housework, occasional grocery shopping, visiting his parents, and occasional fishing. [Tr. 396-97]. Dr. C. Stanley diagnosed Plaintiff with major depressive disorder with moderate to significant limitations in social functioning, possible difficulties setting reasonable goals and making the necessary plans to complete them, some difficulty working in proximity to others and difficulty adapting to change and dealing with stress. [Tr. 397-98]. Dr. C. Stanley noted that his "prognosis is guarded." [Tr. 398].

At the request of the Defendant, two physicians reviewed Plaintiff's medical records and submitted psychological and physical evaluations. On December 22, 2010, Dr. Frank Kupstas submitted a psychological assessment reporting that Plaintiff presented with depression, anxiety, and social phobia, but found that he could perform a wide range of activities. [Tr. 247-68; 263]. He noted that plaintiff's symptoms were credible and that he had moderate limitations. [Tr. 263]. Dr. Nathaniel Robinson submitted a physical assessment on February 2, 2011 in which he found that Plaintiff's complaints "appear partially credible." [Tr. 281-90; 286]. Dr. Robinson reported that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations, and he could occasionally lift fifty pounds, frequently lift 25 pounds, stand or walk for approximately 6 hours in an eight-hour day, and push and pull without limitations. [Tr. 282-85].

Per Plaintiff's request, Dr. William E. Stanley ("W. Stanley"), a licensed senior psychological examiner, conducted a psychological evaluation on January 12, 2012. [Tr. 382-89]. During this exam, Plaintiff reported that his daily activities depend on whether he's having a "good day," which he described as an ability "to get up out of the bed with some energy and I don't worry as much, things are calm . . . [t]hese occur about two days of seven per week." [Tr.

8

385]. Plaintiff described a bad day as, "I [am] worried to death about things. The whole day is in an uproar." He reported that "bad days" occur about five days a week. [Id.]. Plaintiff stated that his daily activities include checking email, reading, housework, and watching television. [Id.]. Dr. W. Stanley diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, and social phobia. [Tr. 386]. He found that Plaintiff was "in need of continued, *consistent* involvement in a comprehensive Mental Health treatment program," [Id.] (emphasis in the original), and in a mental residual functional capacity assessment, Dr. W. Stanley found that Plaintiff had moderate to marked limitations in the majority of categories. [Tr. 387-89].

### B. Other Evidence

The ALJ conducted a hearing on January 24, 2012, in which the Plaintiff, Vocational Expert ("VE"), Dr. Norman Hankins ("N. Hankins"), and Medical Expert, Susan Bland, testified. [Tr. 54-69]. Dr. N. Hankins's partner, Mr. A. Bentley Hankins ("A. Hankins"), submitted a vocational evaluation on January 20, 2012 finding that "[b]ased on the recommended mental functional limitations of Dr. Smith, Dr. Stanley or Ms. Dewitt/Mr. Brown, it is my vocational opinion that Mr. Jennings would be unable to engage in substantial gainful activity on a regular basis due to his inability to sustain competitive employment[.]" [Tr. 408-23]. During the hearing, Dr. N. Hankins testified that Plaintiff's RFC would "include jobs such as dining room and cafeteria workers, dishwashers, janitors and building cleaners, hand packagers, laundry and dry cleaning workers, vehicle and equipment cleaners[.]" [Tr. 66]. The ALJ accorded Dr. N. Hankins more weight than Mr. A. Hankins because Dr. N. Hankins's opinion was based on Plaintiff's assessed RFC. [Tr. 32]. Significant weight was also granted to Dr. Bland because her findings and limitations were consistent with the Plaintiff's medical records. [Id.].

The ALJ issued an unfavorable decision on March 16, 2012. [Tr. 16-39]. The ALJ

9

assessed Plaintiff with a RFC to perform light work, [Tr. 24], assigning significant weight to Dr. C. Stanley's assessment that Plaintiff "can attend and concentrate; should be able to maintain simple, routine tasks; may have difficulty working in proximity to others; and is likely to have difficulty adapting to changes and dealing with stress." [Tr. 30]. Dr. Kupstas and Dr. Robinson were granted "some weight." [Id.]. The opinions of Dr. Gaines, Dr. Locklear, Mr. Brown, and Ms. Dewitt were granted little weight because the ALJ found them inconsistent with the record. [Tr. 30-31].

Plaintiff appealed this decision and the Appeals Council declined review on August 1, 2013. [Tr. 7-8; 1-6].

## V. POSITIONS OF THE PARTIES

The Plaintiff argues that the ALJ's RFC assessment was not based on substantial evidence. The Plaintiff contends that the ALJ failed to properly weigh the medical evidence, specifically erring in the weight assigned to his treating physicians, Dr. Gaines and Dr. Locklear, his therapists, Mr. Brown and Ms. Dewitt, and Dr. W. Stanley. Finally, the Plaintiff argues that the ALJ failed to properly consider the findings of the vocational expert, Mr. A. Hankins, because it was inconsequential whether Mr. A. Hankins had knowledge of the assessed RFC. The Plaintiff concludes that based on the ALJ's lack of substantial evidence in assessing his RFC, the case should be reversed and remanded for an award of benefits or, alternatively, for further proceedings.

The Commissioner answers that the ALJ properly evaluated the medical evidence. The Commissioner initially argues that the ALJ properly considered the opinions of Dr. W. Stanley, Mr. Brown, and Ms. Dewitt. The Commissioner states that Dr. W. Stanley was not a treating physician as he only examined Plaintiff once and that Mr. Brown and Ms. Dewitt should not be

granted controlling weight because they do not qualify as acceptable medical sources. The Commissioner argues that there is substantial evidence in the record to support the ALJ's decision to grant these opinions little weight, and contends that the same is true for the ALJ's consideration of Dr. Gaines, Dr. Locklear, and the multiple examiners included in the record.

The Commissioner claims that the ALJ properly considered the relevant evidence when assessing Plaintiff's RFC, including the vocational expert report and testimony. The Commissioner argues that Mr. A. Hankin's report was properly evaluated and that regardless, he is not an acceptable medical source able to provide medical opinions.

Finally, the Commissioner argues that a request for reversal for an award of benefits is inappropriate in this matter.

## VI. ANALYSIS

The Court will address each of the issues presented by Plaintiff in turn.

### A. Consideration of Medical Opinions and the Treating Physician Rule

The Court finds that the ALJ's RFC determination is based on substantial evidence and that he properly weighed the medical evidence of record. Under the Social Security Act and its implementing regulations, an ALJ will consider all the medical opinions in conjunction with any other relevant evidence received in order to determine if a claimant is disabled. 20 C.F.R. § 404.1527(b).

An ALJ will consider "every medical opinion" received and will give controlling weight to the opinions of treating physicians. See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will

11

give it controlling weight."). Where an opinion does not garner controlling weight, the appropriate weight to be given an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996).

Nonetheless, although a treating physician's diagnosis is entitled to great weight, "the ultimate decision of disability rests with the administrative law judge." Walker v. Sec'y of Health & Human Servs., 980 F.2d 1066, 1070 (6th Cir. 1992) (citing King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). An ALJ does not measure medical evidence in a vacuum, but rather considers physician opinions in conjunction with the record as a whole. See 20 C.F.R. § 404.1527(b) (explaining that in considering medical opinions, the SSA "will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."). The agency will consider such evidence as "statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed

12

treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work." 20 C.F.R. § 404.1529(a).

Therefore, even if the ALJ fails to properly apply the treating physician rule, if substantial evidence exists to support the ALJ's determination of the claimant's RFC based on other relevant evidence, such an error will be found harmless. See Francis v. Comm'r Soc. Sec. Admin., 414 F. App'x 802, 804-05 (6th Cir. 2011) (holding that the regulations require only "good reasons" for the weight assigned a treating physician, "not an exhaustive factor-by-factor analysis," and finding that the ALJ's failure to consider the factors set forth in 20 C.F.R. § 404.1527(d)(2) was harmless error because "the ALJ cited the opinion's inconsistency with the objective medical evidence, [Plaintiff's] conservative treatment and daily activities, and the assessments of [Plaintiff's] other physicians. Procedurally, the regulations require no more."); Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. 2010) (explaining that the treating physician rule "is not a procrustean bed, requiring an arbitrary conformity at all times. If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

Here, there is substantial evidence to uphold the ALJ's determination that Plaintiff has the residual functional capacity to perform light work. [See. Tr. 24]. Even though the ALJ gave little weight to Plaintiff's treating physicians and therapists, the record considered in its entirety supports the ALJ's decision. The ALJ considered each of Plaintiff's severe impairments in turn, weighed the medical evidence, and considered other factors such as Plaintiff's ability to relate to his doctors and daily activities when determining the Plaintiff's RFC. [See 24-32]. The ALJ apportioned the weight given to each medical opinion based on the record as a whole, in

13

accordance with 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Dr. C. Stanley's assessment that Plaintiff "can attend and concentrate; should be able to maintain simple, routine tasks; may have difficulty working in proximity to others; and is likely to have difficulty adapting to changes and dealing with stress" was given significant weight because the ALJ found his opinion to be "generally consistent with the record." [Tr. 30]. The ALJ explained that Dr. Robinson was granted "some weight" because the ALJ found that Dr. Robinson's physical report was credible but that Plaintiff was further limited by his obesity. Dr. Kupstas was accorded some weight because the ALJ found it partially consistent with the record, but that Plaintiff "should be further limited to working with things rather than people." [Id.].

When granting Mr. Brown, Ms. Dewitt, Dr. Locklear, and Dr. Gaines little weight, the ALJ thoroughly explained his reasoning and based his determination on the evidence as a whole. Mr. Brown's 2008 opinion was given little weight because the ALJ found it inconsistent with Plaintiff's behavior during therapy sessions. [Tr. 30]. The ALJ noted that Plaintiff was "able to interact appropriately with his mental health providers . . .[and Plaintiff's] reports that he is able to perform household chores, go grocery shopping, drive, travel alone, and occasionally go fishing are also inconsistent with Mr. Brown's opinion." [Tr. 30]. Ms. Dewitt's opinion was given little weight because the ALJ found it inconsistent with her own treatment records. [Tr. 31].

When considering Dr. Gaines and Dr. Locklear's treatment records and opinions, the ALJ noted similar inconsistencies. The ALJ found that Dr. Gaines's opinion that the Plaintiff was "not a candidate for regular employment" was inconsistent with his "relatively benign findings." [Tr. 31]. Dr. Gaines noted in his treatment records that the Plaintiff was alert and oriented and that "[h]is insight and judgment are good." [Tr. 235]. Dr. Locklear was given little weight

14

because the ALJ not only found that he made an opinion of disability as opposed to a medical diagnosis, but also because Dr. Locklear's own records were inconsistent. In Dr. Locklear's letter of April 14, 2009, he stated that Plaintiff was unable to work. [Tr. 233]. Yet on January 5, 2010, Dr. Locklear noted that Plaintiff was "capable of low stress jobs." [Tr. 331]. Dr. W. Stanley's opinion was considered, but the ALJ found his findings to also be "relatively benign" and that any "psychiatric difficulties would be adequately accounted for by his assigned residual functional capacity." [Tr. 31].

Further, the ALJ's analysis did not begin and end with the opinions of the treating and non-treating physicians. The ALJ relied heavily on Plaintiff's self-reported daily activities and his demeanor during treatment when determining Plaintiff's RFC. The ALJ considered Plaintiff's consistent ability to appropriately interact with his healthcare providers. He noted that Plaintiff's "insight and judgment typically were adequate to good," "his memory processes appeared in tact and that [he] could attend, concentrate, and follow directions[.]" [Tr. 29]. The ALJ further noted the Plaintiff's "shares household duties with his wife, feeds his pets, occasionally goes grocery shopping, manages the bills with his wife, visits his mother and father, drives and travels alone occasionally, and occasionally goes fishing. [Tr. 30].

This case is similar to <u>Dyer v. Social Security Administration</u>, in which the Sixth Circuit found that reliance on plaintiff's self-reported daily activities can provide a basis for not granting treating physicians controlling weight. 13-6024, 2014 WL 2609548, at *4 (6th Cir. June 11, 2014). In that case, the court affirmed the agency's decision when the ALJ did not give the treating physician controlling weight because the diagnosis contradicted evidence of plaintiff's daily activities such as "personal hygiene and grooming, cooking, cleaning, laundry, driving, shopping, visiting with friends and family, caring for her ill mother, and taking care of her pet

15

bird." Id. The Court held that "daily activities such as those reported by [the plaintiff] herself can constitute substantial evidence in support of a finding that a claimant is not disabled." Id. In this matter, the ALJ similarly cited to Plaintiff's daily activities and ability to appropriately relate with his doctors and therapists when determining his RFC.

Plaintiff alleges that the ALJ did not fully adhere to the proper standards when weighing Plaintiff's treating physician records. The Court disagrees. The ALJ juxtaposed Plaintiff's treating physician records with his self-reported daily activities, testimony, non-treating physician records, and recorded demeanor during treatment and found his treating physicians' and therapists' opinions to be inconsistent with the record as a whole. The ALJ thoroughly explained the basis for the weight given to all medical professionals and the Court concurs in the ALJ's reasoning. Plaintiff's treating physicians' and therapists' records are not only inconsistent with Plaintiff's daily activities and demeanor, but the opinions appear inconsistent with the physicians' and therapists' own records, specifically Dr. Locklear's conflicting opinions about Plaintiff's ability to work. [See 233; 330]. The Court finds that the ALJ properly adhered to agency standards in weighing the medical evidence and that his RFC determination is based on substantial evidence. The ALJ provided enough explanation to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5.

### B. Acceptable Medical Sources

The Court finds that the ALJ properly considered the opinions of Mr. Brown and Ms. Dewitt, both of whom are not appropriate medical sources subject to controlling weight. Only acceptable medical sources can establish an impairment. See 20 C.F.R. § 404.1513(a)-(d) (explaining that acceptable medical sources establishing an impairment includes licensed

physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists); 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) ("[m]edical opinions are statements from physicians and psychologists or other *acceptable* medical sources . . .") (emphasis added).

However, the opinions of other medical sources are helpful and should be considered when determining the severity of impairments. See Soc. Sec. Rul. 06-03p, 2006 WL 2329939, *3 (Aug. 9, 2006) ("other medical sources," opinions from "nurse practitioners, physician assistants, and licensed clinical social workers[]" are "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."). Social Security Ruling 06-03p states that the same factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c) can be applied in determining the weight to be afforded to other sources. Id. at *3-4. These factors include: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairment(s); and (6) any other factors that tend to support or refute the opinion. Id. at *4-5. Yet even though an ALJ should consider the above factors, Social Security Ruling 06-03p states that only "acceptable medical sources" can establish a medically determinable impairment, be considered treating sources entitled to controlling weight, and give medical opinions. Id. at *2.

In this case, the ALJ fully considered the opinions of Mr. Brown and Ms. Dewitt and gave them little weight based on their inconsistency with the other evidence. The Court finds that the ALJ followed the procedural standards in weighing their opinions. The ALJ fully

17

explained his reasoning and why Mr. Brown and Ms. Dewitt's opinions and treatment records were accorded little weight. See Id. at *6 (explaining that an "adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning[.]"). Therefore, the Court finds that the opinions of Mr. Brown and Ms. Dewitt, though not acceptable medical sources for finding an impairment, were properly considered by the ALJ.

### C. Vocational Expert Analysis

The Plaintiff argues that the ALJ should have afforded Mr. A. Hankin's Vocational Evaluation Report more weight because it is a valid vocational opinion and it is irrelevant that he did not know Plaintiff's RFC when he submitted his report. [Doc. 14 at 20-21]. The Commissioner responds that Mr. A. Hankins is not an acceptable medical source subject to special deference and that the ALJ properly gave more weight to Dr. N. Hankins's testimony. [Doc. 16 at 20].

The Court finds this argument persuasive. As the Commissioner noted, the Plaintiff has not cited the Court to any authority supporting his position, nor has the Court's own review of the case law yielded any support for this position. [See Id.]. To the contrary, other courts that have addressed such worksheets have treated them as simply evidence of record. See Barbee v. Astrue, 2009 WL 4110259, at *7 (Carter, Mag. J.) (E.D. Tenn. Nov. 23, 2009) (noting that the Vocational Analysis Worksheet was considered "[o]ther evidence of record" pertinent to assess the plaintiff's reading abilities). Therefore, the ALJ was not required to afford significant or controlling weight to the worksheet.

Moreover, the ALJ was not required to specifically discuss the worksheet or the

18

conclusions contained therein. See Simons v. Barnhart, 114 Fed. App'x. 727, 733 (6th Cir. 2004) (quoting Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."). Here, the ALJ did discuss the worksheet and explained why it was not given great weight. The ALJ specifically considered Mr. A. Hankin's analysis and found Dr. N. Hankin's testimony to be more consistent with the record because it was based on Plaintiff's RFC.

Accordingly, the Court finds that this allegation of error is not well-taken.

## VII. CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Summary Judgment **[Doc. 12]** be **DENIED,** and that the Commissioner's Motion for Summary Judgment **[Doc. 15]** be **GRANTED.**

                                                      Respectfully submitted,

                                                      */s/ Bruce Guyton*
                                                      United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).