UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

ROGER L. JENNINGS, )
)
    Plaintiff, )
)
v. ) No. 2:13-CV-246
)
CAROLYN W. COLVIN, )
Commissioner of Social Security, )
)
    Defendant. )

## MEMORANDUM OPINION

This social security appeal is before the court for consideration of "Plaintiff's Objections to the Report and Recommendation of the Magistrate Judge" [doc. 20]. For the reasons that follow, plaintiff's objections will be overruled.

I.

*Background*

In the report and recommendation, United States Magistrate Judge H. Bruce Guyton found that the defendant Commissioner's decision that plaintiff is not disabled is supported by substantial evidence in the record as a whole and should be affirmed [doc. 19]. The magistrate judge recommended that plaintiff's motion for summary judgment [doc. 12] be denied and that defendant Commissioner's motion for summary judgment [doc. 15] be granted.

Plaintiff made application for disability insurance benefits and supplemental security income in September and November, respectively, of 2010. He alleges a disability onset date of January 1, 2006. The claims were denied initially and on reconsideration. Plaintiff requested a hearing that took place on January 24, 2012, before an administrative law judge ("ALJ"), who found that plaintiff was not disabled. The Appeals Council denied plaintiff's request for review on August 1, 2013, which rendered the determination by the ALJ the Commissioner's final decision. This appeal followed.

II.

*Standard of Review*

The court considers only specific objections to a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Smith v. Detroit Fed'n of Teachers*, *Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). The "substantial evidence" standard of judicial review requires that the ALJ's decision be accepted if a reasonable mind might accept the evidence in the record as adequate to support the ALJ's conclusion. *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("Substantial evidence exists when a 'reasonable mind might accept' the relevant evidence 'as adequate to support a conclusion.'") (citation omitted). "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). "Where the Commissioner's decision is supported by substantial evidence, it must be

upheld even if the record might support a contrary conclusion." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (citing *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d at 108).

This court, sitting to review the administrative decision on appeal, cannot try the case *de novo*, resolve conflicts in the evidence, or reverse the ALJ's decision on the ground that the court might have decided issues of credibility differently. *Siterlet v. Sec. of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Credibility determinations with respect to subjective complaints rest with the ALJ. *See id.* (citation omitted). Further, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).

III.

*ALJ's Ruling*

The ALJ concluded that plaintiff "has the following severe impairments: obesity, diabetes mellitus, chronic obstructive pulmonary disorder (COPD), obstructive sleep apnea, musculoskeletal impairment due to knee pain, depression, anxiety, social phobia, and rule out bipolar disorder . . . ." [Tr. 22]. Those impairments notwithstanding, the ALJ further concluded that plaintiff retains the residual functional capacity ("RFC") to perform a range of light work limited, in material part, "to the performance of simple, routine, repetitive tasks working with things rather than people." [Tr. 24]. In support of that conclusion, the ALJ noted that the record documents plaintiff's ability to interact cooperatively and pleasantly with medical sources, showing

good concentration, good rapport, good judgment, appropriate behavior, intact memory, and adequate social skills. [Tr. 28].

In addition, the ALJ found plaintiff's subjective complaints to be not fully credible. [Tr. 25]. By way of example, the ALJ noted that plaintiff

> told Dr. Purswani at his consultative examination in January 2011 that he was not using his inhalers due to lack of insurance. He also stated, however, that he had not checked on the price of these inhalers. . . . Accordingly claimant's failure to be proactive in complying with his physician's prescribed treatment regimen indicates that his respiratory symptoms have not been as troubling as he alleged.

[Tr. 26, 269]. Plaintiff's refusal to comply with recommended *respiratory* treatment, for purported financial reasons, is made even more mystifying by his continued ability to afford the cost of smoking at least one pack of cigarettes per day despite allegedly having no income. [Tr. 61, 227, 269, 341, 345, 358, 382]. These facts diminish the credibility of plaintiff's subjective complaints.

IV.

*Analysis*

As required by 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), this court has undertaken a *de novo* review of those portions of the report and recommendation to which plaintiff objects. Plaintiff argues that the ALJ's erred in his evaluation of six medical source opinions: treating physician Dr. Charles Gaines; therapists David Brown and Karen Dewitt; and consultants Dr. William Stanley, licensed psychological examiner Jeff Davis, and Dr. Charlton Stanley. Plaintiff further argues that the ALJ erred in rejecting the vocational opinion of A. Bentley Hankins.

4

Dr. Gaines noted plaintiff's self-reports of depression, paranoia, mood swings, limited concentration when under pressure, and social anxiety . [Tr. 237-41]. On October 6, 2010, Dr. Gaines wrote that plaintiff's response to treatment has been limited to poor, and that his depression, anxiety, and cognitive impairment have worsened over time. [Tr. 235]. Dr. Gaines opined that, "as on previous occasions when asked, [plaintiff] is not a candidate for regular employment. I do not believe [plaintiff] is a malingerer or is in any way responsible for his illness." [Tr. 235]. However, that same day, Dr. Gaines deemed plaintiff alert and oriented, appropriately dressed and groomed, cooperative and pleasant, logical and goal-directed in his thoughts, with good insight and judgment although psychomotorically slowed with flat affect and a self-report of depressed mood. [Tr. 235].

The ALJ acknowledged Dr. Gaines' opinion but assigned it "little weight," explaining that the opinion was "inconsistent with Dr. Gaines['] own mental status examinations which document relatively benign findings." [Tr. 31]. As cited above, Dr. Gaines' findings did tend to be relatively benign. Further, a statement that a claimant "is not a candidate for regular employment" is akin to terming a claimant "disabled," and that ultimate issue is reserved to the Commissioner, not the treating source. 20 C.F.R. § 416.927(d)(1). Credibility issues also justify the dismissal of Dr. Gaines' opinion to the extent it was based on plaintiff's self-reporting. Moreover, the ALJ nonetheless accommodated plaintiff's complaints by restricting him "to the performance of simple, routine, repetitive tasks working with things rather than people." In sum, the ALJ

5

acknowledged Dr. Gaines' opinion and explained his rejection of it in a manner supported by substantial evidence.

Next, in June 2008 therapist Brown opined "that should Mr. Jennings have to face work related situations, maintaining a stable level of productivity would [sic] most unlikely. While he may gain some level of functioning at home, being able to function outside his home socially or in work related situations is not probable." [Tr. 232]. Mr. Brown cited plaintiff's self-reports of anxiety, mood swings, limited concentration, and "problems when under pressure." Mr. Brown also noted observations of obsessive-compulsive traits.

In December 2011, Mr. Brown and Ms. Dewitt completed a "Mental Impairment Questionnaire." The therapists opined that plaintiff's mental health issues would cause him to miss work more than three times per month, and that he would have difficulty working due to problems maintaining consistency. [Tr. 380]. They predicted: "marked" difficulty in maintaining social functioning; "frequent" deficiencies in concentration and pace; and "repeated" episodes of decompensation in a work-like setting.

The ALJ gave these therapist opinions "little weight." [Tr. 30-31]. He noted that their significant limitations were inconsistent with plaintiff's demonstrated ability to interact appropriately with his mental health providers and evaluators. The ALJ also found that plaintiff's self-reported activities, including grocery shopping and driving alone, were inconsistent with the extreme limitations predicted by the therapists. Lastly, the ALJ noted that the therapist opinions were inconsistent with their own treatment

6

notes, in which they observed plaintiff to be alert, oriented, calm, cooperative, appropriate in behavior and mannerism, well-groomed, easily-conversant, and adequate in insight and judgment, but with an anxious and depressed mood with symptoms of psychosis. [Tr. 358, 360, 362, 364]. In July 2011, plaintiff reported no depression, stable mood, no medication side effects, and "feeling much better." [Tr. 360].

The court again notes that the ultimate issue of disability is reserved to the Commissioner, not a therapist. 20 C.F.R. § 416.927(d)(1). It is also again noted that the ALJ accommodated plaintiff's complaints by restricting him "to the performance of simple, routine, repetitive tasks working with things rather than people." In sum, the ALJ acknowledged Mr. Brown and Ms. Dewitt's opinions and explained his rejection of them in a manner supported by substantial evidence.

Next. licensed senior psychological examiner William Stanley evaluated plaintiff in January 2012. Plaintiff appeared lethargic, with varied concentration and appropriate persistence. [Tr. 383]. Plaintiff was initially reserved "but became more comfortable as the evaluation moved forward." Plaintiff reported anxiety, isolation, excessive worry, and memory problems. [Tr. 384]. Dr. Stanley diagnosed major depression and generalized anxiety disorder and he opined that "[t]hese psychiatric difficulties, even under partial pharmacological control, have and will pose problems for Mr. Jennings in the employment setting." [Tr. 386]. However, Dr. Stanley deemed plaintiff's social skills "adequate." [Tr. 385]. Mental status testing was normal, while further testing indicated no malingering. [Tr. 384-86].

7

Dr. Stanley then completed a Mental RFC Assessment in which he predicted moderate to marked restriction in every listed category. [Tr. 387-89]. The ALJ rejected Dr. Stanley's assessment as being inconsistent with the evaluator's "relatively benign" findings. [Tr. 31]. That rejection is supported by substantial evidence. For example, Dr. Stanley predicted moderate to marked limitation in all five listed categories of social interaction, yet on observation he found plaintiff's social skills to be "adequate." As another example, Dr. Stanley predicted moderate to marked limitations in concentration and persistence, yet on examination he found plaintiff's persistence to be appropriate and his mental status examination results were indeed benign. The ALJ did not err in his consideration of Dr. Stanley's opinion.

Next, licensed senior psychological examiner Jeff Davis evaluated plaintiff in August 2010. Mr. Davis reviewed treatment records, heard plaintiff's self-report, and administered the Minnesota Multiphasic Personality Inventory. [Tr. 425-27]. Mr. Davis diagnosed social phobia and major depressive disorder severe with psychotic features. He assigned a GAF score of 50. [Tr. 428].

Plaintiff complains that the ALJ "failed to evaluate the findings of psychologist [sic] Davis." The court first notes that Mr. Davis offered no vocational opinion. His views regarding plaintiff's psychological condition were largely based on plaintiff's self-reporting. Mr. Davis's opinions were similar to those sources discussed above, and the ALJ adequately explained his general rejection of those views. As to the GAF, such scores are of no controlling value. *See generally DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006); *see also White v. Comm'r of Soc. Sec.*, 572

F.3d 272, 276 (6th Cir. 2009) (GAF score is a "subjective determination"); *Oliver v. Comm'r of Soc. Sec.*, 415 F. App'x 681, 684 (6th Cir. 2011) (a GAF score is generally "not particularly helpful by itself" and is "not dispositive of anything in and of itself").

Next, senior psychological examiner Donna Abbott evaluated plaintiff in July 2007. Plaintiff was noted to be polite, cooperative, rational, and alert, with intact memory and the abilities to attend and concentrate. [Tr. 393, 395, 397]. An unsigned report generated by Ms. Abbott and Dr. Charlton Stanley described plaintiff's prognosis as "guarded," concluding that,

> From a mental standpoint he should be able to maintain simple routine, however he does report difficulty handling job stress and multitasking. Social interaction shows moderate to significant limitation. . . . General adaptation skills show moderate or more limitations. . . . He can drive and travel alone. He may have difficulty setting reasonable goals and have some difficulty working in proximity to others. He is likely to have difficulty adapting to change due to personality features of rigidity, and he is likely to have difficulty dealing with stress. History suggests that stress exacerbates his psychiatric symptoms.

[Tr. 397-98]. Plaintiff complains that the ALJ "fails to acknowledge" that Dr. Stanley found his prognosis to be "guarded." Plaintiff further argues that the ALJ's RFC did not adequately account for Dr. Stanley's views regarding stress and change.

The ALJ gave "[s]ignificant weight . . . to Dr. Stanley's opinion that claimant can attend and concentrate; should be able to maintain simple, routine tasks; may have difficulty working in proximity to others, and is likely to have difficulty adapting to changes and dealing with stress." [Tr. 30]. The ALJ found Dr. Stanley's opinions to be "generally consistent with the evidence of record." The ALJ explained that his RFC accounts for Dr. Stanley's predicted limitations by restricting plaintiff to

9

simple, routine, repetitive tasks which "by their nature do not involve significant change or stress." [Tr. 30].

The court agrees. The ALJ's treatment of Dr. Charlton Stanley's views was well-explained and supported by substantial evidence. Plaintiff does not explain the relevance of his argument regarding Dr. Stanley's use of the word "guarded," and any such argument is therefore deemed forfeited. "[I[ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997) (citation omitted).

It is within the ALJ's power to resolve conflicts in the medical evidence. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994). Certainly, the ALJ *could have* credited plaintiff's subjective complaints, and the sources cited by plaintiff, in this case. However, the ALJ could also have reasonably rejected them based on the present record. The ALJ found the opinions of Dr. Charlton Stanley and treating physician Dr. Robert Locklear (that plaintiff is capable of low stress work [Tr. 331]) to be the most credible and consistent with the record. The ALJ adequately explained his conclusion and fashioned an RFC which took into account plaintiff's limitations. The substantial evidence standard of review permits that "zone of choice." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Lastly, plaintiff argues that the ALJ erred by not adopting the opinion of vocational evaluation specialist A. Bentley Hankins who opined, "Based on the

recommended mental functional limitations of Dr. [sic.] Smith, Dr. [Charlton] Stanley or Ms. Dewitt/Mr. Brown [], it is my vocational opinion that Mr. Jennings would be unable to engage in substantial gainful activity on a regular basis due to his inability to sustain competitive employment (i.e. due to a mental demands–residual abilities discorrespondence)." [Tr. 423]. However, Mr. A. Hankins' opinion was not relevant because it was not based on the actual RFC determined by the ALJ. Instead, the ALJ presented his RFC to testifying vocational expert *Norman* Hankins, who responded that jobs exist in the state and national economies to accommodate *that* RFC. For the reasons discussed above, the ALJ's RFC was sound. There was no error in his use of vocational expert Norman Hankins, or in his rejection of A. Hankins' opinion.

V.

*Conclusion*

The court finds no error in the magistrate judge's report and recommendation. Therefore, the court will overrule plaintiff's objections [doc. 20]; grant defendant Commissioner's motion for summary judgment [doc. 15]; and deny plaintiff's motion for summary judgment [doc. 12]. An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge